UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


ANGELA GARCIA                )      JUDGE PAUL R. MATIA
                             )
            Petitioner       )      CASE NO. 1:04CV0612
                             )
       -vs-                  )
                             )      MEMORANDUM OF OPINION
PATRICIA ANDREWS, Warden     )      AND ORDER
                             )
                             )
            Respondent       )


        This is an action for writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  The petitioner, Angela Garcia ("Garcia"),
was convicted in the Common Pleas Court of Cuyahoga County,
Ohio of aggravated murder of a person under thirteen years old
in violation of R.C. § 2903.01 (counts 1 & 2), aggravated
murder in violation of R.C. § 2903.01 (counts 3 & 4), murder in
violation of R.C. § 2903.02 (counts 5 & 7), aggravated arson in
violation of R.C. § 2909.02 (counts 8 & 9), and insurance fraud
in violation of R.C. § 2913.47 (count 12).  She was sentenced
to life imprisonment with parole eligibility after 20 years as
to counts 1 & 2, counts 3 & 5 were merged into count 1 and
counts 4 & 9 were merged into count 2, 10 years on counts 7 &
8, 8 years on count 9 and 18 months on count 12.  Counts 1 & 2

were to run consecutive to each other; counts 7 & 8 were to run
consecutive to each other but concurrent to counts 1 & 2; and
counts 9 and 12 were to run consecutive to counts 1 & 2.  Upon
receipt of the return of writ, the case was referred to a
United States Magistrate Judge for a Report and Recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.2.
The magistrate judge recommended that the writ be granted as to
Garcia's fourth claim for relief and denied as to the first,
second, fifth and seventh claims.  This matter is now before
the Court upon the objections filed by the petitioner and the
respondent to the Magistrate Judge's Report and Recommendation.
(Docs. 26, 30).  For the following reasons, after a *de novo*
determination, the Magistrate Judge's Report and Recommendation
is adopted in part and rejected in part.

In her petition for writ of habeas corpus, Garcia
raised the following grounds for relief:

(1) The trial court improperly allowed a "crime scene
analyst" to testify as to his personal opinions as
the "profile" of the perpetrator of the offense.
Because such testimony might have enabled the jury to
convict a defendant based upon the typical facts
rather than the specific facts of the case, . . .
admission of this testimony was in violation of the

2

Fifth, Sixth and Fourteenth Amendments of the United States Constitution;

(2) The trial court erred when it allowed a "forensic auditor" to testify and to provide opinions tantamount to "profiling" for consideration by the jury. . . The improper admission of this irrelevant testimony was in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

(3) The trial court improperly dismissed two jurors for cause in this matter. . . The dismissal of these jurors was in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution;

(4) During deliberations, juror brought to the court's attention allegations of [a juror's] misconduct. The trial court refused to inquire as to the nature of the misconduct and the extent to which the deliberations might have been contaminated. . . The failure of the trial court to dismiss the juror, or in the alternative, to hold an evidentiary hearing was in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution;

3

(5) The trial court improperly restricted the cross-examination of a state witness where Petitioner's counsel attempted to expose the bias of that witness. . .  The restriction of cross-examination in the Petitioner's case is in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

(6) Prosecutorial misconduct throughout the trial deprived Petitioner her right to a fair and impartial jury. . . The misconduct, individually and cumulatively, are [sic] in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution; and

(7) The effect of cumulative error during the trial deprived [petitioner] of a fair trial. . . The cumulative effect of these errors is in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Garcia filed objections to the magistrate judge's recommendation as to the first, second, fifth and seventh grounds for relief.  The magistrate judge recommended that the fourth ground for relief had merit so the respondent's

objection pertains to that ground.  There are no objections to the third and sixth grounds for relief.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this case.  Under the AEDPA, a federal court may grant a petition for writ of habeas corpus (1) where the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

First and Second Claims for Relief

The Court will address the first and second claims for relief together as did the magistrate judge in her Report and Recommendation and Garcia in her objections.  Garcia asserted in her first and second claims for relief that the trial court improperly allowed the testimony of a crime scene analyst and a forensic auditor because their testimony invaded the province of the jury by drawing conclusions on issues of fact and credibility rather than testifying regarding scientific principles.  The Ohio Eighth District Court of Appeals agreed that their testimony was improperly admitted but ruled that it did not amount to prejudicial error.  *State v.*

5

*Garcia*, 2002 WL 1874535 at * 6 (Ohio App. 8th Dist. Aug. 15, 2002). Garcia contends that the state court and the magistrate judge used the incorrect standard. Instead, the state allegedly had the burden to prove beyond a reasonable doubt that the error did not effect the outcome of the case. *United States v. Hastings,* 461 U.S. 499 (1983). As stated by the Ohio Supreme Court in *State v. Webb*, 70 Ohio St.3d 325, 335 (1994), *cert. denied,* 514 U.S. 1023 (1995), "[a] nonconstitutional error is harmless if there is other substantial evidence to support the guilty verdict." Garcia asserts that a reviewing court must determine whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction, not whether sufficient evidence exists that may sustain a conviction. *Chapman v. California*, 386 U.S. 18, 23 (1967). The United States Supreme Court held in *Brecht v. Abrahamson,* 507 U.S. 619, 621 (1993), that a "less onerous harmless error" standard announced in *Kotteakos v. United States*, 328 U.S. 750 (1946), is appropriate on habeas review of constitutional error. 507 U.S. at 637. Under the *Kotteakos* standard the court must determine "whether the error 'had substantial and injurious effect or influence in determining the jury's [or the court's] verdict.'" *Brecht,* 507 U.S. at

6

637,(quoting *Kotteakos,* 328 U.S. at 776).  The Court expressly said that, to meet this test, a habeas petitioner alleging constitutional trial error is not entitled to habeas relief in federal court unless he can establish actual prejudice.  *Id.; Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999), *cert. denied,* 528 U.S. 1120 (2000).  There must be more than a "'reasonable possibility'" that the error contributed to the jury's verdict. *Brecht,* 507 U.S. at 637.  If, however, there is a "reasonable probability " that a trial error affected or influenced the verdict, then the *Brecht* standard would be satisfied. *Kyles v. Whitley*, 514 U.S. 419, 435,(1995).  See *Zobel v. Tate*, 2002 WL 220637 at * 5 (6th Cir. Feb. 11, 2002). In applying the harmless error analysis on habeas review for cases governed by the AEDPA, the harmless error standard set out in *Brecht,* 507 U.S. at 637, is used, even when the "federal habeas court is the first to review for harmless error." *Gilliam,* 179 F.3d at 995; *Mitzel v. Tate*, 267 F.3d 524, 534 (6th Cir. 2001), *cert. denied,* 535 U.S. 966 (2002).

After deciding that the crime scene analyst's and the forensic auditor's testimony were improperly admitted the state appellate court, using the Ohio standard for harmless error, determined that their testimony did not alter the outcome of

the trial based on the following summary of the facts.

{¶ 65} In the case at bar, the undisputed evidence
showed that Garcia told inconsistent and
contradictory accounts of what she did when she
realized the house was on fire. Garcia never disputed
the state's evidence that contradicted her claim that
she had broken the second floor bedroom window and
escaped out onto the roof and then jumped down to the
ground. Firefighter Hlatky testified that he broke
out that window to ventilate the room. There was also
testimony that Garcia could not have gone out the
window because it was too small. Uncontradicted
evidence showed that her physical condition and
appearance were wholly inconsistent with that of
someone who had exited through the second floor
window as an escape.

{¶ 66} Garcia never disputed, furthermore, the
evidence proving that she had taken out insurance not
only on the house just before the fire, but also on
the lives of her two daughters. Garcia never disputed
the evidence that Nyeemah was tightly bound with a
cord the child could not have tied. Finally, evidence
showed that Garcia knew she could not join the Navy
if she had custody of Nyeemah and Nijah and that she
had made inquiries about transferring custody to her
sister.

{¶ 67} Nothing contradicted the evidence of Garcia's
expertise as a contents specialist for Sabur Builders
and that the property losses listed on her own claim
forms could not be substantiated. Garcia did not
dispute her neighbor's testimony that Sabur Builders
moved pieces of furniture out of the house the day
before the fire. There was no evidence to rebut
Lanum's testimony that Garcia admitted to
intentionally setting the fire for insurance money.

{¶ 68} Because of the foregoing evidence, which we
determine to be substantial, undisputed, and
persuasive, we find that McCrary's and Saunders'
improper testimony did not alter the outcome of the
trial.

Examination of these facts shows that the evidence was

sufficient to prove that Garcia was guilty.  The testimony of

the crime scene analyst and the forensic auditor likely did not have such an injurious effect or influence the jury's verdict.

The respondent points out that the state court considered the claims as harmless errors under state law and did not review the claims as constitutional errors because Garcia did not fairly present them as such. In her first assignment of error in her appellate brief, she argued that the crime scene analyst should not have been qualified as an expert and that his testimony was inadmissable under Rule 702 of the Ohio Rules of Evidence. (R 11 Resp. Exh. G, Garcia's brief pgs. 14-22). In her second claim for relief, Garcia referred the court to the previous assignment of error regarding the forensic auditor. (R 11 Resp. Exh. G, Garcia's brief pg. 10).

In *Blackmon v. Booker*, 394 F.3d 399(6th Cir. 2004), the court held that federal courts lack jurisdiction to consider a habeas corpus petition that was not fairly presented to the state court. The Sixth Circuit utilizes the following factors in determining whether a petition has fairly presented a constitutional claim: (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in

9

question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. *Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004), *cert. denied, 125 S.Ct. 1653 (2005).* General allegations such as denial of a fair trial and due process do not fairly present constitutional claims. *Blackmon,* 394 F.3d at 400; *Hicks v. Straub,* 377 F.3d at 553. *Blackmon* did not cite federal case law identifying how errors at his trial constituted denials of a "fair trial" and "due process" rights, nor how his case mirrored cases in which such denials have been found.  Thus, he did not develop any convincing arguments regarding how his rights were violated. *Blackmon,* 394 F.3d at 400.  As a result, the Sixth Circuit reversed the grant of the writ and remanded with instructions to dismiss the petition.

The Court has ruled that Garcia has not shown that the state court's ruling as to the first and second claims for relief that the admission of the crime scene analyst's and the forensic auditor's testimony was harmless error.  At the least, her failure to present a constitutional argument to the state court requires dismissal of these two claims.

10

Fourth Claim for Relief

Garcia contends in her fourth claim for relief that the trial court committed constitutional error when it failed to properly address potential juror taint.  The following facts were taken from the state appellate court decision:

> {87} The record shows the following sequence of events. During deliberations, the jury foreman informed the judge that he had concerns for his safety if he remained to deliberate and reach a verdict. He conveyed his concerns to the court by a letter which stated:
>  {¶ 88} "Your Honor, because I work in the immediate area of the burnt home, I feel grave concern for me and my family's personal safety. The family of the defendant owns property in the neighboring area and can easily identify me, especially since we are in the same business. The propensity for contact, (visual or physical) is highly likely. It is my feeling as well as those of my fellow jurors, that I be removed from the jury."
> {¶ 89} The record indicates that the letter was signed by three different jurors, who, according to Garcia's counsel, tainted the deliberation process because, apparently, all three people had been improperly discussing matters amongst themselves. A second note was also delivered to the court in which the jury requested a change in their foreman.

The "aliunde" rule, codified in Ohio Rule of Evidence 606(B), is explained in *State of Ohio v. Adams,* 141 Ohio St. 423, 427 (1943).  The aliunde rule states that the "verdict of the jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence." *Id*.  Among the reasons for

11

adoption of the aliunde rule was that to permit a juror to
impeach the verdict by his testimony would allow a dissatisfied
or corrupt juror to destroy a verdict after he had assented to
it and that to permit such testimony would destroy the privacy
of the deliberations of the jury and expose the jurors to
criticism and embarrassment.  Federal Rule of Evidence 606(b)
closely follows the Ohio rule but does not codify the aliunde
rule.  It allows a juror to testify about any extraneous
information that was improperly brought to the jury's
attention.  *Doan v. Brigano,* 237 F.3d 722, 730 (6th Cir. 2001).

Federal Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of a verdict or
> indictment, a juror may not testify as to any matter
> or statement occurring during the course of the
> jury's deliberations or to the effect of anything
> upon that or any other juror's mind or emotions as
> influencing the juror to assent or dissent from the
> verdict or indictment or concerning the juror's
> mental process in connection therewith, except that a
> juror may testify on the question whether extraneous
> prejudicial information was improperly brought to the
> jury's attention or whether any outside influence was
> improperly brought to bear upon any juror. Nor may a
> juror's affidavit or evidence of any statement by the
> juror concerning a matter about which the juror would
> be precluded from testifying be received for these
> purposes.

Rule 606(b) allows a juror to testify only as to whether
extraneous prejudicial information was improperly brought to
the jury's attention and whether an outside influence was

12

brought to bear on any juror. *United States v. Gonzales*, 227 F.3d 520, 524 (6th Cir. 2000).  A juror cannot testify about the motives and influences affecting the verdict. *Id.*  An "outside influence" usually means a factor originating outside of normal courtroom procedures which influences jury deliberations, such as a threat against a juror. *United States v. Jones*, 132 F.3d 232, 245 (5th Cir. 1998), *aff.*, 527 U.S. 373 (1999).  An "extraneous influence occurs when a juror has a specific knowledge about a relationship with either the parties or their witnesses. *United States v. Herndon*, 156 F.3d 629, 636 (6th Cir. 1998).  When a potential meritorious claim of extraneous influence is raised, the court must conduct a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), to give the defendant an opportunity to show bias. *United States v. Davis,* 177 F.3d 552, 557 (6th Cir. 1999).  The court should look to the nature of the extraneous material and its likely effect on the hypothetical average jury, not the source of the information or the locus of its communication, which determines whether the defendant has been prejudiced and thus whether his constitutional rights were violated. *United States ex rel. Owen v. Mann*, 435 F.2d 813, 820 (2nd Cir. 1970), *cert. denied*, 402 U.S. 906 (1971).

13

In *United States v. Herndon*, a juror thought he might have had previous business dealings with the defendant. The court held that a *Remmer* hearing was necessary. In a later case, *United States v. Gonzales,* the jury foreman allegedly said that defense counsel always represented guilty clients. Based on this testimony, the trial court granted a new trial. On appeal, the Sixth Circuit found that the alleged statement did not have an obvious potential for a likelihood of affecting the jury's verdict. *Id*. 227 F.3d at 527.

In *Doan v. Brigano,* a juror conducted an experiment in her own home to see if the defendant was telling the truth. She informed the other jurors of her findings during deliberations. The court found that the juror was acting as a witness whose testimony the defendant could not confront and attempt to discredit by cross-examination resulting in the deprivation of the right to a fair trial. *Id.* at 731. The state court used Ohio Rule of Evidence 606(B) which use the Sixth Circuit held to be contrary to clearly established precedent. *Id.* at 733. The Sixth Circuit recognized that the general rule under federal evidence law is that a juror may not impeach his verdict but that an exception exists where external factors were present that may have affected the jury's deliberation. *Id*. Ohio Rule of Evidence 606(B) allows a juror

14

to testify on the question of extraneous prejudicial information only after some evidence of that act or event has been presented.  Federal Rule of Evidence 606(b) is less stringent.  A juror may testify about any extraneous prejudicial information brought to the jury's attention during deliberations.  The state court should have used Federal Rule of Evidence 606(b) to determine whether the defendant's constitutional rights were violated.

*United States v. Davis* involved facts similar to the present case.  After all of the evidence was presented, a juror asked to be excused because he lived in the same neighborhood as the defendant and operated a used car business that catered to individuals in a certain section of town heavily populated by minority citizens.  Because he had done business with some of the defendants, witnesses and their families, he was recognized in the community and feared for his safety and his business if persons in the neighborhood knew he was a juror. He informed the court that his fear was instigated by the fact that during the trial one of his employees told him that members of the community were already aware of his jury service and were discussing his role in the proceedings.  *Id*. at 556. The juror had expressed his fear in the jury room to other jurors.  The court held that a *Remmer* hearing was necessary

15

"[g]iven the fact that [the juror] was clearly motivated by fear of retaliation from the defendants, their families, and their acquaintances, the fact that the information that prompted the fear was provided by an extraneous source, and the fact that a number of jury members openly agreed that a person in [the juror's] predicament should seek to be removed from the panel, such further inquiry seems not only appropriate, but necessary to ensure the impartiality of the jury." *Id*. at 557.

An important consideration for the *Davis* court was the fact that the juror's fear was prompted by an extraneous source, a fact absent in the present case.  In the present case, the juror stated that because he lived in the same neighborhood as the defendant, he feared for his life.  Any juror may experience fear when being involved in a criminal case.  It is highly likely that a juror may live in the same neighborhood as a defendant.  However, that fact should not present an "obvious potential" or a "likelihood of affecting the jury's verdict. *United States v. Gonzales,* 227 F.3d at 527.  No extraneous information was presented so that the state court, even if not using Federal Rule of Evidence 606(b), did not act contrary to clearly established federal law as established by the Supreme Court.

16

The magistrate judge's Report and Recommendation contains a thorough examination of the relationship between the aliunde rule, and the Ohio and Federal Rules of Evidence and how they apply to the facts of this case.  Because of the importance of the sanctity of jury deliberations, it is important to support the continuation of the vitality of the aliunde rule.  The Court has found no United States Supreme Court decision that requires vacation of that rule and this Court refuses to do so.

Fifth Claim for Relief

In her fifth claim for relief, Garcia alleges that the trial court violated her Sixth Amendment right to confront witnesses against her by not allowing her counsel to cross-examine an informant about what Garcia had said regarding the results of Garcia's polygraph examination.  The informant testified at trial that Garcia admitted to her that Garcia set two fires in the house to claim money under her insurance policy and did not mean for her children to be hurt.  The defense was then prohibited on cross-examination from establishing that Garcia had also told the informant that she had passed two polygraph examinations regarding the investigation of her case.

17

The Sixth Amendment's confrontation clause grants an accused the right to confront witnesses against him.  Its purpose is to provide the accused the opportunity of cross-examination.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678. (1986).  A judge has  a duty to ensure that only reliable evidence is introduced at trial.  *United States v. Scheffer,* 523 U.S. 303, 309 (1998).  But cross-examination is not entirely without limits and is subject to reasonable restrictions.  *Id.* at 523 U.S. 303, 308 (1998). The Supreme Court in *Delaware v. Van Arsdall* stated:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20(1985) (per curiam ) (emphasis in original).

475 U.S. at 679. "There is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even

the best polygraph exams. Individual jurisdictions therefore may reasonably reach differing conclusions as to whether polygraph evidence should be admitted." *Id*. 523 U.S at 312. There is a lack of scientific consensus as to the reliability of polygraph examinations. *Id*. 523 U.S. at 310-11.

The trial court could have limited any evidence as to Garcia's polygraph examination. Because polygraph examinations are unreliable, the trial court did not error in disallowing the jury to hear the evidence that Garcia passed a polygraph examination.

Seventh Claim for Relief

In her seventh claim for relief, Garcia asserts that the effect of cumulative error during the trial deprived her of a fair trial. First, the Court has ruled that no error occurred. The state court decision was neither contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Further, the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Dorchy v. Jones*, 320 F.Supp.2nd 564, 581 (E.D. Mich. 2004), *aff.* 398 F.3d 783 (6th Cir. 2005), citing *Loraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). See *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), *cert. denied,* 537 U.S. 1192

19

(2003); *Davis v. Burt*, 2004 WL 771224 at *9 (6th Cir. Apr. 9, 2004).

Accordingly, for the foregoing reasons, the objections filed by Garcia to the magistrate judge's Report and Recommendation are overruled. (Doc. 26). The objection filed by the respondent, Patricia Andrews is sustained. (Doc. 30). The magistrate judge's Report and Recommendation is adopted as to the first, second, third, fifth, sixth and seventh claims for relief and rejected as to the fourth claim for relief. The petition for writ of habeas corpus is denied.

IT IS SO ORDERED.

Date: May 31, 2005.                    /s/ Paul R. Matia
                                 UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

A copy of this Memorandum of Opinion and Order was filed electronically this 31st day of May, 2005. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of the foregoing Memorandum of Opinion and Order was also sent by United Ststes mail on May 31, 2005 to Jon W. Oebker, Esq., Office of the

Prosecuting Attorney, Cuyahoga County, 8th Floor, Courts Tower,

Justice Center, 1200, Ontario Street, Cleveland, Ohio 44113.

<u>/s/ Paul R. Matia</u>
UNITED STATES DISTRICT JUDGE